JAMES A. McCALL AND HOLLY H. McCALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCall v. Commissioner
Docket No. 6166-86.
United States Tax Court
T.C. Memo 1987-141; 1987 Tax Ct. Memo LEXIS 131; 53 T.C.M. (CCH) 371; T.C.M. (RIA) 87141; March 16, 1987. Richard L. Few, Jr., for the petitioners. Larry D. Anderson, for the respondent. PATE
MEMORANDUM OPINION PATE, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) of the Code (redesignated as sec. 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section *132 1556, 100 Stat. 2755) and Rules 180, 181 and 182. [1]
Respondent determined deficiencies in petitioners' 1982 and 1983 Federal income taxes of $1,615 and $1,969, respectively. After concessions by petitioners the only issue for our decision is whether petitioners may deduct transportation, meals, and lodging as traveling expenses incurred while "away from home" on business. James A. McCall (hereinafter "petitioner") and Holly H. McCall are husband and wife and filed joint income tax returns for 1982 and 1983. They resided in Seneca, South Carolina, at the time their petition was filed. Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner is a pipefitter and a member of the Pipefitters Union in Greenville, South Carolina (hereinafter "the Union"). Through his membership in the Union, petitioner obtained employment with Pullman Power Products Corporation (hereinafter "Pullman") at the Alvin W. Vogtle Nuclear Plant (hereinafter "Vogtle") in Waynesboro, *133 Georgia. Construction at Vogtle began at the end of 1973. Pullman's contract at Vogtle began on June 1, 1978, and originally was due to expire on October 31, 1985. In fact, on October 20, 1982, it was extended until December 31, 1987. From 1982 through 1984, the demand for pipefitters at Vogtle consistently increased, although some turnover occurred during this period. Petitioner worked at Vogtle from November 1981 until April 1982, when he became ill. After missing six weeks of work because of his illness, petitioner was terminated by Pullman for excessive use of sick leave. Two weeks later, on May 31, 1982, petitioner was rehired at the Vogtle site where he worked without interruption until being laid off on July 19, 1984. Petitioner was rehired on November 9, 1984, and remained employed with Pullman when this case was tried. While working at Vogtle, petitioner stayed in a motel in the Waynesboro, Georgia area during the week and returned to his residence in Seneca on the weekends. Since his two children attended school in Seneca, petitioner did not wish to move his family to Waynesboro. Petitioner contends that his employment at Vogtle was temporary and, therefore, *134 the cost of his food, lodging, and transportation are deductible business expenses. Respondent maintains that petitioner's job was indefinite and, therefore, petitioner's traveling expenses constitute nondeductible personal expenses. Personal, living and family expenses, such as the ones in issue, ordinarily are not deductible. Sec. 262. However, section 162(a)(2) allows a deduction for traveling expenses, including amounts expended for transportation, meals and lodging, while a taxpayer is "away from home" in pursuit of a trade or business. The parties agree that, if we find that petitioner was away from home in pursuit of his business (within the meaning of the statute), he is entitled to a deduction for the full amount claimed. The concept of "home" in tax cases is usually raised when the taxpayer lives in one city and works in another. Generally, when a taxpayer establishes his home in one city and accepts employment in another, the expenses of traveling to and from the city in which the taxpayer's residence is located are not incurred in pursuit of his trade or business. . Rather, they are non-deductible *135 personal living expenses resulting from the taxpayer's decision to maintain his residence in a place other than the city in which his business is located. . Therefore, "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not necessarily where his personal residence is located. E.g., ; , affd. . However, an exception to this rule exists where the taxpayer's employment is only temporary. ; . Employment is "temporary" if it can be expected to last only for a short period of time. ; , affd. . The fact that employment lacks permanence, however, does not make that employment temporary. . *136 It is considered "indefinite" unless termination actually is foreseeable within a fixed or reasonably short period of time. , affg. ; . Brief interruptions of work at a particular location do not, standing alone, cause employment which would otherwise be "indefinite" to become "temporary." . Moreover, even if a job is temporary at the time it is accepted, later developments may show that it became indefinite. See ; Further, in making our determination, we must focus on the circumstances surrounding the job, not the taxpayer's mode of living. See . Traveling expenses relating to an "indefinite" job are not deductible regardless of how justified the taxpayer may be from a subjective or personal perspective in maintaining a residence away from where his business is *137 located. , affd. per curiam . Petitioner argues that his case is similar to , involving a missile construction project in North Dakota which offered only part year employment and had little likelihood of being completed. Petitioner also attempts to analogize his facts to the "unique" facts in , where a construction project, with fluctuating employment requirements, hired a taxpayer to perform a specific job which was dependent on the needs of others employed at the worksite. The Courts held in both of those cases that the taxpayer's employment was temporary. Because of the following facts, we think that this case is distinguishable. The record reveals that, although petitioner did not have a permanent position, he had excellent prospects for continued employment when he accepted the job at Vogtle. . Vogtle was a large year-round construction project which would take many years to complete. Further, *138 during the years in issue, Vogtle had an increasing need for pipefitters and petitioner's employment was not limited to a specific portion or period of the project. The interruption in petitioner's employment due to his illness was unforeseeable when he began working at Vogtle and does not make this employment temporary. See ; . Nonetheless, after his medical release, petitioner was rehired within two weeks and worked continually at Vogtle until July of 1984. Thus, except for a brief interruption due to an unanticipated event, petitioner spent over two and a half years working at Vogtle. This substantial length of time of actual employment and the absence of any indication in the record that an earlier termination was foreseeable are persuasive in our determination that petitioner's employment was indefinite. We recognize that petitioner retained his residence in Seneca for a very valid reason: to permit his children to continue attending school there. However, this is a personal reason which does not operate to convert personal expenses into deductible business *139 expenses. As explained in , affg. in part, revg. and remanding in part : when a taxpayer accepts employment * * * for an indefinite time away from the place of his usual abode, * * * the decision to retain a former residence is a personal choice, and the expenses of traveling to and from that residence are non-deductible personal expenses. * * * See also . Consequently, we find petitioner's position at Vogtle was indefinite and, accordingly, hold that his 1982 and 1983 traveling expenses are not deductible. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise provided, all section references are to the Internal Revenue Code of 1954, as amended, and all rule references are to the Tax Court Rules of Practice and Procedure.↩